IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | **Criminal No. 20-184** |
| | ) | |
| BRYAN MONTGOMERY | ) | |

## Opinion and Order on Motion to Suppress

Defendant Bryan Montgomery is charged in a three-count Indictment with Possession with the Intent to Distribute a Quantity of Acetyl Fentanyl, Methoxyacetyl Fentanyl, and Fentanyl[1], Possession of a Firearm by a Convicted Felon[2], and Possession of a Firearm in Furtherance of a Drug Trafficking Crime[3].  Presently before the Court is Mr. Montgomery's Motion to Suppress Evidence (ECF No. 39) to which the government has filed a response (ECF No. 50).  A hearing on the motion was held on August 23, 2021.  ECF No. 44.  At the hearing, testimony was presented from Officer John Denis of the Pittsburgh Police Department.  For the reasons that follow, Defendant's motion will be denied.

### I.    Background

Officer John Denis is a Pittsburgh Police Officer assigned to the Housing Authority Collaboration Unit to patrol the property of the Housing Authority of City of Pittsburgh.  On May 1, 2020, Officer Denis was stationed in the Pittsburgh Police Zone 1 Northview Heights substation conducting video surveillance of Northview Heights Estates Housing Community.

---

[1]  21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

[2]  18 U.S.C. § 922(g)(1).

[3]  18 U.S.C. § 924(c)(1)(a)(i).

The Northview Heights area is a high crime area where open air narcotics transactions are conducted.  Officer Denis was conducting surveillance using Housing Authority's cameras.  On May 1, 2021, he operated a point, tilt , and zoom camera that he could control.  Exhibits 3 and 4.

While viewing a live video feed Officer Denis observed a black male wearing a white hoodie and black sweatpants, later identified as Mr. Montgomery.  Video footage from the camera Officer Denis was using shows Mr. Montgomery from a distance standing outside in the Northview Heights high-rise area.  Ex. 4.  Officer Denis zoomed in on Mr. Montgomery, specifically focusing on the front pocket of the white hoodie.   Officer Denis observed an L-shaped bulge in the front hooded pocket, which he testified was consistent with a firearm.  As video surveillance continued, Mr. Montgomery was speaking with someone out of view to his left in the entranceway to the high-rise.  While Mr. Montgomery was speaking to the other person, he placed his left-hand into the right side of his hoodie pocket and slightly pulled the end of the L-shaped object slightly out so that a portion was visible.  Officer Denis testified that the dark object protruding out of the hoodie pocket was the handle and extended magazine of a firearm.  Subsequent video footage shows Mr. Montgomery walking along the apartment complex towards the rear of the high-rise.  Ex. 3.  Officer Denis decided to approach Mr. Montgomery to check to see if he had a concealed carry permit and to generally ask him questions about the firearm in light of the fact that this was a high-crime area.

Driving an unmarked police car, Officer Denis and his partner approached Mr. Montgomery in a parking lot at the rear of the Northview Heights high-rise, next to 533 Mt. Pleasant Road.  A portion of the encounter with Mr. Montgomery was captured on video footage from a static camera with a view of the parking lot.  Ex. 1.  The footage shows the officers driving into the parking lot and bringing the vehicle to a stop a short distance from Mr.

Montgomery.  The officers, in full uniform, exited the car and began to walk towards Mr.

Montgomery.  Officer Denis testified that Mr. Montgomery's eyes widened when he saw the

officers and he put his hand in his right-side pocket while "blading" his body in such a way that

the right-side of his body was away from the officers' view.  The officers asked Mr.

Montgomery if he would speak with them, at which time Mr. Montgomery ran.  Video footage

shows that Mr. Montgomery's flight began immediately after the officers took a few steps

towards him.

The officers pursued Mr. Montgomery.  Officer Denis testified that they pursued Mr.

Montgomery because his conduct in fleeing raised the suspicion that he did not lawfully possess

the firearm and because of the need to protect the safety of the community.  Portions of Mr.

Montgomery's flight and the officer's pursuit was captured on video footage from a static

camera with a view of the rear of the Northview Heights high-rise.  Ex. 2.  Officer Denis testified

that it appeared that Mr. Montgomery removed the firearm from his pocket as he ran towards the

front of the Northview Heights high-rise.  The officers apprehended Mr. Montgomery in front of

the high-rise at 533 Mt. Pleasant Road.  A pat down of Mr. Montgomery uncovered suspected

narcotics and related materials.  Although the officers did not see Mr. Montgomery discard the

firearm as he ran, a search along Mr. Montgomery's path of flight resulted in the discovery of a

firearm in a bush.  Mr. Montgomery was read his Miranda rights and arrested.

## II.  Discussion

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects,
> against unreasonable searches and seizure, shall not be violated, and no Warrants
> shall issue, but upon probable cause, supported by Oath or affirmation, and
> particularly describing the place to be searched, and the persons or things to be
> seized.

U.S. Const. Amend. IV.  A Fourth Amendment seizure does not occur when a police officer

approaches an individual to ask a question.  United States v. Brown, 765 F.3d 278 (3d Cir.

2014).  Such "mere encounters" are permissible even if an officer has no basis for suspecting a

individual of illegal activity.  Florida v. Rodriguez, 469 U.S. 1, 5-6 (1984).  If an officer has

reasonable suspicion that an individual is involved in illegal activity, the officer is permitted to

conduct a brief investigatory stop known as a Terry stop.  In Terry v. Ohio, the Supreme Court

held that a brief investigatory warrantless search, based on less than probable cause, is

permissible under the Fourth Amendment where a police officer has a reasonable, articulable

suspicion that criminal activity is afoot.  Terry, 392 U.S. 1, 30 (1968), see also United States v.

Yamba, 506 F.3d 251, 255 (3d Cir. 2007).  The Supreme Court has "described reasonable

suspicion simply as 'a particularized and objective basis' for suspecting the person stopped of

criminal activity."  Ornelas v. United States, 517 U.S. 690, 696 (1996) (quoting United States v.

Cortez, 449 U. S. 411, 417-418 (1981)).  Reasonable suspicion is more than a hunch but less than

probable cause.  United States v. Green, 897 F.3d 173, 183 (3d Cir. 2018).  In evaluating the

reasonableness of a Terry stop, the Court will look at the totality of the circumstances.  U.S. v.

Valentine, 232 F.3d 350, 353 (citing U.S. v. Sokolow, 490 U.S. 1, 8 (1989) (citations omitted).

"The Supreme Court has stressed that the totality of the circumstances standard enables 'officers

to draw on their own experience and specialized training to make inferences from and deductions

about the cumulative information available to them that might well elude an untrained person.'"

United States v. Thompson, 772 F.3d 752, 759 (3d Cir. 2014) (quoting United States v. Arvizu,

534 U.S. 266, 273 (2002)).  In considering a specific set of circumstances, "due weight must be

given . . .  to the specific reasonable inferences which [a police officer] is entitled to draw from

the facts in light of his experience."  Terry, 392 U.S. at 27.

Mr. Montgomery agrees that law enforcement was permitted to approach him to conduct a mere encounter but also correctly notes that Mr. Montgomery was free to disengage from the encounter, which in this case he did by running.  Therefore, Mr. Montgomery argues that the encounter escalated to a Terry-stop seizure once the officers gave chase, which required that the officers had a reasonable suspicion that criminal activity was afoot.  Mr. Montgomery concedes that had the officers actually observed Mr. Montgomery possessing a firearm, his flight in a known high-crime area would have established reasonable suspicion justifying the officers' pursuit.  Mr. Montgomery argues that the officers did not in fact observe a firearm in Mr. Montgomery's possession and therefore lacked reasonable suspicion.  As discussed below, the Court concludes that the officers possessed reasonable suspicion that Mr. Montgomery was engaged in criminal activity; namely, the unlawful possession of a firearm.

Officer Denis testified that he observed an L-shaped bulge in Mr. Montgomery's front pocket while conducting video surveillance in the Nothview Heights area.  The relevant video footage from Exhibit 4 shows a close-up view of Mr. Montgomery's hoodie with an L-shaped bulge.  The close-up view begins at approximately 47 seconds and the L-shaped bulge is visible as the footage continues and the camera is zoomed out.  Subsequently, the video footage from Exhibit 4 shows the handle and extended magazine slightly protruding out of Mr. Montgomery's pocket.  The Court finds Officer Denis's testimony credible that the L-shaped bulge was consistent with a firearm, which was then further confirmed based on the protruding firearm handle and extended magazine.  The video footage of Mr. Montgomery's reaction when the officer's approached him in the parking lot and Mr. Montgomery's subsequent flight supports Officer Denis's testimony that such conduct raised his suspicion that Mr. Montgomery did not lawfully possess the firearm.  In addition, Officer Denis knew that the area he was surveilling is

5

a known high-crime area.  Law enforcement is "'not required to ignore the relevant

characteristics of a location in determining whether the circumstances are sufficiently suspicious

to warrant further investigation.'"  United States v. Nelson, 284 F.3d 472, 477 (3d Cir. 2002)

(quoting Illinois v. Wardlow, 528 U.S. 119, 124 (2000)).  The observation that Mr. Montgomery

possessed a firearm combined with Mr. Montgomery's flight when the officer's approached him

in a known high-crime area established reasonable suspicion that Mr. Montgomery was engaged

in criminal activity.  Ornelas, 517 U.S. at 696 (probable cause exists "where the known facts and

circumstances are sufficient to warrant a man of reasonable prudence in the belief that

contraband or evidence of a crime will be found").  Moreover, the officer's pursuit  of Mr.

Montgomery was further justified  in light of the need to protect the public.  Considering the

totality of the circumstances, the Court finds that the officers were justified in pursing Mr.

Montgomery for the purpose of conducting a Terry-stop.

### III.    Conclusion

For the reasons stated above, Mr. Montgomery's Motion to Suppress Evidence (ECF No.

39) is denied.


IT IS SO ORDERED.


Dated: October 4, 2021                           __s/*Marilyn J. Horan*
                                                 Marilyn J. Horan
                                                 United States District Court Judge